# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* THOMAS ALBERT STAFFORD, JR., Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

THOMAS ALBERT STAFFORD, JR.,

        Respondent-Appellant.

UNPUBLISHED
June 27, 2017

No. 331517
Oakland Circuit Court
Family Division
LC No. 2012-796040-DL

---

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Respondent was adjudicated guilty by a jury of one count of criminal sexual conduct in the third degree (CSC-III) (sexual penetration – victim at least 13 but under 16 years of age), MCL 750.520d(1)(a), and one count of criminal sexual conduct in the fourth degree (CSC-IV) (sexual contact – force or coercion employed), MCL 750.520e(1)(b). He appeals as of right, arguing that the verdicts were against the great weight of the evidence. Because the substance of defendant's argument ultimately concerns the credibility of the victim, RH, absent any exceptional circumstances, we affirm.

This case arises from the sexual assault of RH. RH and her mother (mother) attended a birthday party for respondent's sister at respondent's home. RH and mother elected to stay the night at respondent's home, and RH went to sleep on a sectional couch located in the living room. RH woke up that evening when someone entered the living room, and that person then began rubbing his penis against her butt. She feigned sleep, but the individual then grabbed her hand and forcefully placed it on his penis. RH unsuccessfully tried to pull her hand away from the individual's penis. The perpetrator then pulled down RH's pants and placed his penis in her vagina. After a brief time, he removed his penis and headed into a nearby bathroom. RH looked toward and into the bathroom, and she saw respondent just before he shut the bathroom door.

Respondent contends that the jury's verdicts were against the great weight of the evidence because RH's testimony was incredible due to inconsistencies in her account of the sexual assault and due to the surrounding circumstances and lack of forensic corroboration. We disagree.

-1-

Generally, a defendant must raise an argument that a jury's verdict was against the great weight of the evidence in a motion for a new trial in order to preserve that issue for appellate review. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014); see also MCR 7.211(C)(1)(c) ("In a case *tried without a jury*, the appellant need not file a motion for remand or a motion for new trial to challenge the great weight of the evidence in order to preserve the issue for appeal.") (emphasis added). Respondent failed to preserve the great-weight issue, raising the matter for the first time on appeal. "Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights." *Lopez*, 305 Mich App at 695. Respondent argues, without citation of any relevant authorities, that the preservation requirement with respect to the great weight of the evidence is inapplicable to juvenile delinquency proceedings. Although we tend to disagree with respondent's stance, reversal is unwarranted in this appeal even if we treat the issue as preserved or not needing preservation. Accordingly, we shall not rule on the preservation dispute and instead proceed on the assumption that there is no preservation problem, jettisoning the plain-error test.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003), citing *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury[.]" *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). "[W]hen testimony is in direct conflict and testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Id.* at 643 (citation and quotation marks omitted).

In *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015), this Court observed as follows regarding a great-weight challenge:

> To support a new trial, the witness testimony must contradict indisputable physical facts or laws, be patently incredible or defy physical realities, be so inherently implausible that it could not be believed by a reasonable juror, or have been seriously impeached in a case that was marked by uncertainties and discrepancies. [Citation, quotation marks, and alteration brackets omitted.]

"The hurdle that a judge must clear in order to overrule a jury and grant a new trial is unquestionably among the highest in our law." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008) (quotation marks and citation omitted). The Michigan Supreme Court in *Lemmon*, 456 Mich at 642-643 n 22, further explained:

> Criminal cases are usually fought on the battlefield of witness credibility, and this is particularly true in situations involving the credibility of a victim of a CSC crime where the only witnesses present are the victim and the perpetrator . . . . It is a well-established rule that a jury may convict on the uncorroborated evidence of a CSC victim . . . . Jury decisions in these cases are essentially based on the jury's assessment of the witnesses' credibility. [Citations omitted.]

"The credibility of a witness is determined by more than words and includes tonal quality, volume, speech patterns, and demeanor, all giving clues to the factfinder regarding whether a witness is telling the truth." *Id*. at 646 (citation omitted).

Respondent contends that RH's account of her sexual assault was "extremely inconsistent," and therefore, the jury's verdicts were against the great weight of the evidence. Respondent maintains that RH's disclosures about the types of alcohol she consumed prior to the incident differed, that her description of the duration of the sexual assault varied between one and five minutes, that RH failed to disclose to the nurse who performed RH's sexual assault examination, that respondent forcefully placed her hand on his penis, and that RH's testimony that she pretended to be asleep during the sexual assault conflicted with her own testimony that after respondent forcefully placed her hand on his penis, she attempted to pull her hand away. Respondent also contends that RH's testimony that she provided a detective with a written statement about the incident directly conflicted with the detective's testimony.

While RH's accounts of the incident may have contained inconsistencies, RH acknowledged that fact during the trial. RH explained that she did not sleep for over 24 hours following the incident and that she had been exhausted and emotionally upset. She testified, "Maybe some details I left out [be]cause . . . I wasn't comfortable to tell some people that." Further, RH's testimony during the trial about the sexual assault was clear and unequivocal. She testified that respondent grabbed her hand and "put it onto [his] penis." She indicated that when RH's hand was on respondent's penis, he took RH's hand and made her move it up and down. According to RH, she tried to pull her hand away, but respondent "kept putting it back." She then felt "hands on [the] strap on [her] pants, and then [the] pulling down [of her] pants." RH testified that respondent next put his penis "inside of [her] vagina." She "could feel it and it hurt." RH's testimony that there was forceful sexual contact and sexual penetration by respondent was unwavering.

Thus, even though respondent may have identified some inconsistencies in RH's testimony, respondent has failed to demonstrate that RH's testimony contradicted indisputable physical facts or law, was patently incredible, defied physical realities, was so inherently implausible that a reasonable juror could not believe the testimony, or was so seriously impeached that it was deprived of all probative value. And to the extent that respondent questions RH's failure to scream or call out for help during the incident, or RH's failure to use her cellphone to take a photograph of respondent after the incident, we note that, under MCL 750.520i, "[a] victim need not resist the actor in prosecutions under sections 520b to 520g," which include CSC-III and CSC-IV. We also find RH's explanation for why she did not scream or cry out for help entirely plausible – fear of an immediate violent response. The argument about failing to take a photograph seems to be, in our view, a somewhat absurd argument and an unreasonable expectation, given the circumstances.

Respondent also argues that RH's account was inconsistent because it was unsupported by forensic evidence. However, under MCL 750.520h, a victim's testimony "need not be corroborated in prosecutions under sections 520b to 520g." Furthermore, the forensic testimony and evidence in this case did not exculpate respondent, did not establish that no sexual assault occurred, and did not contradict RH's claims; it was inconclusive. Finally, respondent asserts that RH's allegations could not be believed because two others were sleeping on the same couch

-3-

and would certainly have been awakened had a sexual assault actually taken place. The couch was a sectional, no one slept side-by-side RH, it was the middle of the night, a party with drinking and drugs had ended earlier that evening, and, according to RH's testimony, respondent employed stealth in committing the sexual assault. It is certainly conceivable that under those circumstances the two individuals on the other end of the sectional would not have been awakened by the assault. Ultimately, that was an issue within the province of the jury to decide, not this Court.

In sum, the evidence did not preponderate so heavily against the CSC-III and CSC-IV guilty verdicts that it would be a miscarriage of justice to allow the verdicts to stand.[1]

Affirmed.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello

---

[1] Respondent makes a cursory reference to the sufficiency of the evidence; however, even if a sufficiency argument was properly presented to us, we would reject it, as the assessment of the weight of the evidence and witness credibility was a task for the jury. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992).